**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
LYNN KLEIMAN, *individually*,

                                    Plaintiff,

                  - against -

KINGS POINT CAPITAL MANAGEMENT, LLC
and JEFFREY BATES,

                                    Defendants.
----------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

CV 18-4172 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.    <u>PRELIMINARY STATEMENT</u>

       In this diversity action, Plaintiff Lynn Kleiman ("Plaintiff") asserts claims for negligence and breach of fiduciary duty against Defendants Kings Point Capital Management, LLC ("Kings Point") and Jeffrey Bates ("Bates") (collectively, "Defendants"). *See generally* First Amended Complaint ("FAC") [DE 15]. The FAC alleges that Defendants prepared the estate plan for Plaintiff's parents and Plaintiff was intended to receive the overwhelming majority of her parents' estate. However, due to the alleged Defendants' failures -- contrary to her parents' expressed intent -- Plaintiff claims that she had to share equally with her two siblings in the distribution of her parents' assets. Defendants now move to dismiss the FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See generally* Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Mem.") [DE 60]. Plaintiff opposes the motion. *See generally* Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Pl.'s Opp'n") [DE 61]. Defendants also submitted a reply. Reply in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Reply") [DE 62].

Judge Feuerstein referred Defendants' motion to this Court for a Report and Recommendation as to whether the motion should be granted. *See* October 16, 2019 Order.[1] For the reasons which follow, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be GRANTED.

## II.    BACKGROUND

### A.    Facts Alleged in the Amended Complaint

The following factual allegations have been taken from the First Amended Complaint. All facts alleged by Plaintiff are assumed to be true for purposes of deciding the motion to dismiss and are construed in a light most favorable to Plaintiff as the non-moving party. *See, e.g.*, *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir. 2018); *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009); *McGrath v. Bayer HealthCare Pharms. Inc.*, 393 F. Supp. 3d 161, 166 (E.D.N.Y. 2019); *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 425 (E.D.N.Y. 2012).

Defendant Kings Point is a financial services company which manages investment portfolios and provides consolidated reporting for families with significant net worth.  FAC ¶ 2. Kings Point is as an independent, fee-based, SEC Registered Investment Advisor. *Id.*  It is a limited liability company organized under Tennessee law with offices in Brentwood, Tennessee and Great Neck, New York. *Id.* ¶ 3.  Defendant Bates is a senior relationship manager for all of Kings Point's clients and he co-chairs the company's investment committee. *Id.* ¶ 4.  Bates is based in Kings Point's Tennessee office. *Id.*

Plaintiff is a Missouri resident. *Id.* ¶ 1.  She is the adult daughter of Ralph Levine and Ora Levine (collectively, the "Levines"). *Id.*  The Levines were clients of Kings Point and Bates

---

[1]    After Defendants' motion to dismiss was referred to this Court, the instant case was reassigned from then-Magistrate Judge Brown. *See* January 21, 2020 Order.

who were entrusted with the "management of [the Levines'] financial assets in such a way as to effectuate their estate plan and their desires for the distribution of their assets after the[ir] deaths." *Id.* ¶ 7.  Defendants represented to the Levines and Plaintiff Kleiman that Defendants would manage the Levines' assets prudently and responsibly.  *Id.* ¶ 8.  Plaintiff and the Levines relied on Defendants' statements, actions, and representations that they would responsibly manage the Levines' assets.  *Id.* ¶ 9.

Defendants were in possession of two estate planning documents which belonged to the Levines.  *See id.* ¶¶ 10-11. The first document was the "Ralph and Ora Levine Living Trust" (the "Living Trust") dated February 27, 1992.  The Living Trust was amended six times between 1992 and 2009.  *See id.* ¶ 10.  The sixth amendment to the Living Trust, dated October 22, 2009, "made specific distributions to Eric and Leonard Levine, [the] two sons of Ralph and Ora Levine, and amended Article 12 to provide for remaining trust property to be given to Lynn Kleiman and her family."  *Id.*  The second document in Defendants' possession was the "Last Will of Ora Levine" (the "Last Will").  *Id.* ¶ 11.  The Last Will provided that "all assets of Ora's estate at her death will pour over into the Living Trust, to be distributed pursuant to the terms of the Living Trust, with such distribution providing that Plaintiff . . . would receive the vast majority of the testamentary distribution."  *Id.*

Pursuant to these estate planning documents, particularly the sixth amendment to the Living Trust, the Levines expressed their unequivocal written intent that Plaintiff should receive the overwhelming bulk of their estate and financial assets.  *Id.* ¶ 12.  Plaintiff alleges that she was the primary and specifically identifiable beneficiary of the Levines' written estate plan and Defendants knew or should have known of her status as such.  *Id.* ¶ 11.  In light of Plaintiff's being a specifically identifiable beneficiary in the Living Trust and the Levines' estate plan,

Plaintiff further alleges that Defendants owed her a duty with respect to "the proper and appropriate placement of their financial assets, and the proper and appropriate execution of documentation in connection with those accounts" to effectuate the Levines' intent in their estate plan. *Id.* ¶ 13.

Defendants placed "the bulk or all" of the Levines' financial assets into three participant IRA Custodial Accounts (the "Custodial Accounts") with Pershing Advisor Solutions, LLC ("Pershing"). *Id.* ¶ 14. The investments with Pershing were held in the Custodial Accounts pursuant to three "Traditional IRA Adoption Agreements" (The "IRA Agreements"). *Id.* Defendants recommended that Ralph Levine sign the IRA Agreements which made Ora Levine his primary beneficiary. *Id.* The IRA Agreements were subject to a "Traditional Individual Retirement Account (IRA) Adoption Agreement and Plan Document Traditional Individual Retirement Custodial Account" (the "Plan Documents") which were prepared by Pershing. *Id.* ¶¶ 15-16. The FAC asserts that Defendants should have known that Plaintiff and the Levines would rely upon their recommendations as to the execution and utilization of these Plan Documents. *Id.* ¶¶ 17-18.

On October 20, 2013, Ralph Levine passed away. *Id.* ¶ 19. Plaintiff promptly notified Defendants of Ralph's passing. *Id.* At that time, Ora Levine was elderly and in failing health, a fact of which Defendants were aware. *Id.* ¶ 20. Defendants also knew that they needed to promptly attend to Ora's interests. *Id.* Specifically, Defendants "had a duty to take all steps reasonable and necessary to ensure that the financial assets of the Levines that were subject to the terms of the IRA Agreements that Defendants . . . had recommended were distributed in accordance with the Levines' estate plan, and that [Plaintiff] would receive the benefits."

4

*Id.* ¶ 21.  However, the Complaint enumerates six actions that Defendants failed to undertake which allegedly would have allowed Plaintiff to receive the benefits set forth in the estate plan:

1. After the death of Ralph Kleiman, Defendants failed to contact Pershing and seek advice and direction as to how to ensure that the financial assets in the Custodial Accounts of Ralph Levine would be transferred to Ora Levine

2. After the death of Ralph Levine, Defendants failed to distribute the financial assets in the Custodial Accounts of Ralph Levine to Ora Levine as Primary Beneficiary;

3. After the death of Ralph Levine, Defendants failed to take the proper steps to ensure that the financial assets in the Custodial Accounts were transferred to Ora Levine, so that the assets of the Levines would be distributed to Plaintiff pursuant to the Levines' estate plan documents;

4. After the death of Ralph Levine, Defendants failed to take the proper steps to ensure a Beneficiary was designated for the Custodial Accounts in the event of Ora Levine's death;

5. Prior to the death of Ralph Levine, Defendants failed to take proper steps to ensure designated contingent beneficiaries were named under the Plan Documents; and

6. Prior to the death of Ralph Levine, Defendants failed to recommend placement of the IRA in Custodial Accounts with Pershing that would allow the beneficiary designation to Ora to lapse upon her death.

*Id.* ¶ 22(a)-(f).

Several weeks later, on November 8, 2013, Ora Levine passed away. *Id.* ¶ 23.  By the time of Ora's death, Defendants had taken no action to distribute the assets in the Custodial Accounts to her or otherwise ensure that she would receive Ralph Levine's interest in these accounts.  *Id.*  In total, the Custodial Accounts were valued at approximately $1,750,000. *Id.* ¶ 24.

The Plan Documents specifically provided that almost all of Ralph and Ora Levines' assets would be transferred to Plaintiff, and that Leonard and Eric Levine would receive cash

distributions of $25,000 and $50,000, respectively. *Id.* However, Pershing followed the language of the Custodial Accounts and IRA Agreements, and refused to distribute the Levines' assets pursuant to the Living Trust and Last Will of Ora Levine. *Id.* ¶ 25. Consequently, Ralph and Ora Levines' assets were distributed *per stirpes* with one third each going to Plaintiff, Eric Levine and Leonard Levine. *Id.*

The FAC asserts two counts for (1) negligence and (2) breach of fiduciary duty. *Id.* ¶¶ 28-36. Both of these causes of action "incorporate by reference" all of the preceding paragraphs. *See id.* ¶¶ 28, 33. As to her negligence claim, Plaintiff alleges that Defendants owed her, a known beneficiary, a duty to effectuate the expressed intent of the Levines. *Id.* ¶ 29. She alleges that Defendants' duties consisted of the appropriate placement of the Levines' financial assets and proper execution of documentation in connection with those assets. *Id.* Plaintiff then contends that Defendants breached their duties and, as a direct and proximate cause of their negligence, the assets of the Custodial Accounts were never distributed to the Plaintiff pursuant to the Living Trust. *Id.* ¶¶ 30-31. With respect to the second claim, Plaintiff states that Defendants owed her fiduciary duties, that they breached those duties, and that she was damaged as a direct and proximate cause of the breaches of those duties. *Id.* ¶¶ 34-36. Plaintiff seeks damages of approximately $3,500,000.

### B.    Procedural Background

This action was commenced on July 10, 2017 in the Circuit Court of the County of St. Louis, Missouri. On August 21, 2017, Defendants removed this action from the St. Louis Circuit Court to the United States District Court for the Eastern District of Missouri. *See* Notice of Removal [DE 1]. In addition to the allegations and claims set forth above, the original Complaint was brought by Plaintiff individually and as the representative of her parents' estate.

*See* Complaint ("Compl.") [DE 1-1].  However, Plaintiff voluntarily dismissed her claims as the

representative of her parents' estate.  *See* Notice of Voluntary Dismissal [DE 16].  In filing  the

FAC, Plaintiff also omitted her breach of contract claim in its entierety.  *See generally* FAC.

On July 6, 2018, upon Defendants' motion, Judge Autrey transferred venue of this case

from the Eastern District of Missouri to the Eastern District of New York.  *See* Opinion,

Memorandum and Order ("Order Transferring Venue") [DE 39].  The basis for Judge Autrey's

decision was a forum selection clause contained in two Discretionary Investment Management

Agreements, the first executed by the Levines on November 19, 2009 (the "2009 Agreement")

and the second executed by Plaintiff as attorney-in-fact for the Levines on July 12, 2012 (the

"2013 Agreement").  *See id.* at 2.  Both the 2009 and 2013 Agreements included forum selection

clauses in which the Levines agreed to resolve all disputes "arising out of, under or in connection

with this Agreement . . . in the appropriate federal or state court in the State of New York and in

no other forum."  *Id.*  Thus, the instant action was then transferred to this District on July 23,

2018.  *See* DE 40.

When Defendants filed their motion to transfer venue, they had simultaneously filed a

motion to dismiss—which was still pending at the time this case was transferred.  *See* DE 21; 23.

On October 24, 2018, Judge Feuerstein held a status conference and directed Defendants to refile

their fully briefed motion to dismiss.  DE 51.  Defendants refiled their motion on October 29,

2018.  DE 52.  On July 11, 2019, then-Magistrate Judge Brown issued a Report and

Recommendation finding that Defendants' motion to dismiss should be deemed withdrawn

without prejudice.  *See* Judge Brown's July 11, 2019 Report and Recommendation ("July 2019

R&R") [DE 54].  Judge Brown pointed out that after this diversity action was transferred, "the

parties . . . refiled their original motions from the Eastern District of Missouri, without the

7

benefit of briefing the New York choice of law issue.  In their memoranda, originally filed with the Eastern District of Missouri, the parties set forth and briefed Missouri choice of law rules in order to determine the applicable state law.  *Id.*  Judge Brown also noted that in their memoranda, "the parties agreed that the situs of the district court determines the applicable choice of law rules."  *Id.*  As a result, Judge Brown recommended that the motion be refiled and set forth the "applicable rules or statutes pursuant to which the motion is brought" pursuant to Local Rule 7.1(a).  *Id.* at 3.  After noting that no objections were filed to Judge Brown's Report and Recommendation, Judge Feuerstein adopted the Report in its entirety.  *See* July 26, 2019 Order [DE 55].

Defendants' motion to dismiss was refiled for a second time on October 15, 2019. See Notice of Motion [DE 58].  Judge Feuerstein then referred Defendants' motion for a Report and Recommendation.  On January 21, 2020, the case was reassigned to this Court.

### C.    The Parties' Positions

#### 1.    *Defendants' Motion*

Defendants' first argument is that, pursuant to New York choice-of-law principles, New York's three-year statute of limitations applies and Plaintiff's claims are time-barred.  Defs.' Mem. at 5-9.  According to Defendants, this action was commenced on July 10, 2017 -- almost four years after Ora Levine passed away on November 8, 2013, the latest date Plaintiff's causes of action could have accrued.  *Id.* at 9.   Defendants then argue that New York law provides the substantive basis for Plaintiff's claims pursuant to the choice-of-law clause in the 2009 and 2013 Agreements.  *Id.* at 6-7.  These provisions state as follows:

> To the extent not inconsistent with applicable federal law, this Agreement and any dispute, disagreement, or issue of construction or interpretation arising hereunder whether relating to its execution, its validity, the obligations provided herein or performance shall be

8

> governed or interpreted according to the laws of the State of New York without regard to choice of law considerations except for the Section entitled Arbitration, which shall be governed by the Federal Arbitration Act.

Defs.' Mem. at 6; November 19, 2009 Discretionary Management Agreement ("2009 Agreement") § 23, annexed as Exhibit "A" to the Declaration of Jeffrey Bates ("Bates Decl.") [DE 59-3]; July 12, 2013 Discretionary Investment Management Agreement § 23 ("2013 Agreement") § 23, annexed as Exhibit "B" to the Bates Decl. The Bates Declaration is attached as Exhibit 3 to the Affirmation of Jacqueline K. Graves, Esq. in Support of Defendants' Motion to Dismiss the First Amended Complaint ("Graves Aff.") [DE 59].

Although Plaintiff withdrew her breach of contract claim from the Complaint, Defendants argue that Plaintiff's remaining claims "are wholly dependent upon and derivative of the contractual relationship between the Levines and Kings Point and that it was foreseeable for Plaintiff to become bound by the Agreements." *Id.* at 7. As a consequence, Defendants submit that pursuant to New York law, a beneficiary lacks standing to pursue a negligence claim unless he/she is in strict privity, absent special circumstances which are not applicable here. *Id.* In light of this standard, Defendants maintain that Plaintiff does not possess the requisite standing. *Id.* at 9-11. Defendants then contend that Plaintiff's claim for breach of fiduciary duty is duplicative of her negligence claim and should be dismissed. *Id.* at 11.

In the event Missouri law governs, Defendants argue that "Missouri courts have never recognized that the intended beneficiary of an estate may bring a negligence claim against a financial advisor." *Id.* According to the Defendants, Missouri courts have recognized a "third-party negligence claim brought by an intended beneficiary of an estate only in very circumscribed cases" which involve an attorney-client relationship that is inapplicable here since Defendants are financial advisors. *Id.* at 11-12 (citing *Estate of Dean v. Morris*, 963 S.W. 2d

9

461, 464 (Mo. Ct. App. W.D. 1998)).  However, even if the Court likened the financial advisor-client relationship to the attorney-client relationship, it is Defendants' position that Plaintiff's claims still fail.  *Id.* at 12-13.  Defendants assert that Plaintiff has failed to allege that Defendants owed a duty to her as a non-client.  *Id.* at 12.  Relying on *Donahue v. Shughart, Thomson & Kilroy, P.C.*, Defendants argue that it is crucial for the non-client to establish "the existence of a specific intent by the client that the purpose of the attorney's services were to benefit the [non-client]."  *Id.* (quoting *Donohue v. Shughart, Thomson & Kilroy*, P.C., 900 S.W.2d 624, 629 (Mo. 1995)).  Consequently, Defendants contend that although Plaintiff is a beneficiary of the Living Trust, she was not a beneficiary or a specifically identifiable beneficiary of the Custodial Accounts which form the basis of her claims.  *Id.* at 13-14.  According to the FAC, the IRA Agreements were signed by Ralph and Ora Levine, and Ora Levine was made the primary beneficiary of the Custodial Accounts.  *Id.* at 14 (citing FAC ¶ 14).

Defendants then argue that Plaintiff has not sufficiently alleged facts to demonstrate negligence and causation.  *Id.* at 16-17.  As to negligence, Defendants assert that Plaintiff never alleges that it was the Levines' intent that the funds in the Custodial Accounts be distributed to Plaintiff or that the beneficiary designation executed by Ralph Levine was anything other than an expression of his own desire.  *Id.* at 16.  Regarding causation, "[i]t was not Kings Point's actions that caused Kleiman not to receive the entire proceeds of Ralph Levine's Custodial Accounts, it was Ralph Levine's free exercise of his right to name whomever he pleased as beneficiaries of his IRA accounts."  *Id.*  According to Defendants, Plaintiff theorizes that Ora Levine would have wanted to act in contravention of the Plan Documents governing the Custodial Accounts, but Plaintiff does not allege such facts.  *Id.* at 16-17.  As they similarly argued under New York law,

Defendants claim that the breach of fiduciary duty cause of action is duplicative under Missouri law and should be dismissed. *Id.*

Lastly, Defendants argue that Plaintiff's breach of fiduciary duty claim fails to meet the federal pleading standard because "Kleiman fails to allege or define the 'fiduciary duty' that Kings Point allegedly owed to Kleiman, identify how that duty was breached, or how the breached duty caused Kleiman damages." *Id.* at 17-18. Defendants refer the Court to the FAC which alleges that Defendants "breached said fiduciary duties as set forth above." *See* FAC ¶ 34.

### 2.    *Plaintiff's Opposition*

Plaintiff argues that New York's choice of law rules mandate that Missouri law applies to Plaintiff's claims. Pl.'s Opp'n at 11-18. Under the "interest analysis test," Plaintiff submits that when the claim is a tort, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the great interest in regulating behavior within its borders." *Id.* at 12 (quoting *Long Oil Heat, Inc. v. Spencer*, 375 F. Supp. 3d 175, 194 (N.D.N.Y. 2019)). Plaintiff contends that "the place of injury is Missouri" because that is where she lives and where the estate plan was put together. *Id.* According to Plaintiff, "[t]he only connection to New York . . . is that Kings Point is a New York corporation and has some offices there . . . [so] there is simply no basis for applying New York law." *Id.* at 13.

Plaintiff then discounts the impact of the 2009 and 2013 Agreements on the applicability of New York law. *See id.* at 13-18. She only signed the 2013 Agreement "as Power of Attorney for her parents Ralph and Ora, and not in her individual capacity." *Id.* at 13. Based on this circumstance, Plaintiff claims that she is not bound by those agreements and, as a non-party, is not bound by their choice of law clauses. *Id.* at 13-14. To further her point, Plaintiff submits that her claims "are not based on and do not call for an interpretation or construction of the

Agreement[s]." *Id.* at 15. "The only issue [is] a tort based inquiry as to whether Defendants acted as reasonably prudent investment advisors in not understanding the Pershing IRA Custodial Account documents and taking the appropriate steps with respect to the Levine assets in those RIA accounts upon the death of Ralph Levine." *See id.* at 16-18. However, even if New York law applies, Plaintiff maintains that the choice of law provision at issue in this case is contractual and New York law limits the application of such choice of law claims "to contract claims and not tort-base[d] claims." *Id.* at 12.

Next, Plaintiff argues that she has standing to pursue her claims under both New York and Missouri law because "in the 'vast majority' of states, courts allow a wronged beneficiary to sue the professional whose negligence caused a loss." *Id.* at 19 (quoting *Wainwright v. Matrix Asset Advisors, Inc.*, No, 05 Civ. 227, 2004 WL 3418933, at * (S.D.N.Y. July 27, 2005)). Citing an Iowa Supreme Court case, Plaintiff claims that a financial advisor can be sued by identified beneficiaries in the financial advisor's written estate plan for the client due to the advisor's negligence. *Id.* at 20 (citing *St. Malachy Roman Catholic Congregation of Geneseo v. Ingram*, 841 N.W.2d 338, 340 (Iowa 2014)). Similarly, to the extent that Defendants maintain that there was no attorney-client relationship between Plaintiff and Defendants, Plaintiff claims that the duty of an attorney extends beyond the client to specifically identifiable beneficiaries of non-testamentary instruments. *Id.* at 22.

Lastly, in responding to Defendants' statute of limitations arguments, Plaintiff contends that Missouri provides a five-year statute of limitations for tort claims, and since her claims were filed within four years of Ora Levine's death, those claims are timely. *Id.* at 24. Even if New York law supplies the applicable statute of limitations, Plaintiff argues that her claims are still timely. *Id.* According to Plaintiff, New York's "statute of limitations for actions on contracts is

12

six years." *Id.* Moreover, Plaintiff asserts that the statute of limitations for breach of fiduciary duty claims is tolled until the fiduciary's "open repudiation" of the trust relationship. *Id.* at 26. Referring to her own affidavit, Plaintiff states that it was not until August 2014 "that she realized the assets would not be transferred to her by Defendants . . . and that she would have to proceed with legal action." *Id.* (citing Lynn Kleiman Affidavit ("Kleiman Aff.") [DE 61-1], annexed as Exhibit A to Plaintiff's Memorandum in Opposition, ¶ 14).

### 3.    *Defendants' Reply*

Defendants reiterate their argument that New York's three-year statute of limitations applies. Defs.' Reply at 1-2. Disputing the application of a six-year statute of limitations "for contracts," Defendants maintain that the line of cases which support Plaintiff's argument are outdated and have been overturned. *Id.* at 2-3. Defendants further argue that "the New York Court of Appeals has definitively held that the statute of limitations for tort claims seeking money damages is three years, regardless of whether the claim has its genesis in a contractual relationship." *Id.* at 3. With respect to Plaintiff's argument that her claims are tolled under the "open repudiation" doctrine, Defendants submit that this doctrine only tolls claims which seek an accounting or equitable relief, which is inapplicable here because Plaintiff seeks monetary damages. *Id.* at 5-6. According to the Defendants, Plaintiff is bound by the choice-of-law provisions in the 2009 and 2013 Agreements and her claims are subject to them as they were likewise subject to the forum selection clause. *Id.* at 7. Finally, Defendants repeat their arguments that Plaintiff lacks standing under both New York and Missouri law and that Plaintiff failed to plead factual allegations which demonstrate Defendants were negligent or breached a fiduciary duty. *See id.* at 8-11.

III.    <span style="font-variant: small-caps;">Standard of Review</span>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quotations and citation omitted); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The plaintiff must satisfy "a flexible 'plausibility standard.'"  *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom.  Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also id.* at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their

14

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556–57) (internal citations omitted).

In adjudicating a Rule 12(b)(6) motion to dismiss, the Court must limit itself to facts alleged in the complaint, which are accepted as true; to documents attached to the complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; or to documents whose terms and effect are relied upon heavily in the complaint and, thus, are rendered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see also ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

## IV. DISCUSSION

### A. New York's Choice of Law Rules

"In diversity cases, a federal court located in New York will generally apply the choice-of-law rules and statute of limitations of the law of the forum state, not the law of the state in which the action accrued." *SOCAR (Societe Cameroonaise d'Assurance et de Reassurance) v. Boeing Co.*, 144 F. Supp. 3d 391, 395 (E.D.N.Y. 2015) (citing *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d 220, 225 (E.D.N.Y. 2011)); *Stuart v. Am. Cyanamid Co.,* 158 F.3d 622, 626–27 (2d Cir.1998). "Although transferee courts typically apply the transferor court's choice of law provisions when a case has been transferred pursuant to [28 U.S.C. § 1404], that rule does not apply when a case has been transferred as a result of a forum selection clause." *Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*, No. 15-cv-5887, 2018 WL 1935984, at *5

(E.D.N.Y. April 23, 2018) (citing *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 65-66 (2013)). The instant case was transferred to the Eastern District of New York from the Eastern District of Missouri pursuant to a forum selection clause. Therefore, this Court will apply New York's choice of law rules. *See id.*; *see also Atl. Marine*, 571 U.S. at 65-66 ("[A] plaintiff who files suit in violation of a forum-selection clause enjoys no such 'privilege' with respect to its choice of forum, and therefore it is entitled to no concomitant 'state-law advantages.' Not only would it be inequitable to allow the plaintiff to fasten its choice of substantive law to the venue transfer, but it would also encourage gamesmanship. . . . The Court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right.").

"New York courts generally 'enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or transaction." *Portillo v. Regal Entertainment, LLC*, No. 17-cv-1873, 2020 WL 4336389, at *6 (E.D.N.Y. July 28, 2020) (quoting *Welsbach Elec. Corp. v. Mastec N. Am., Inc.*, 859 N.E. 2d 498, 500 (N.Y. 2006)). "[I]n order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Mayagüez S.A. v. Citigroup, Inc.*, No. 16 Civ. 6788, 2018 WL 1587597, at *8 (S.D.N.Y. Mar. 28, 2018) (quoting *Krock v. Lipsay*, 97 F.3d 640, 644 (2d Cir. 1996)).

In the absence of an applicable choice-of-law provision, New York courts apply an "interest analysis" test "under which the law of the jurisdiction with the greatest interest in the litigation applies." *Krock*, 97 F.3d at 645; *see also AroChem Int'l v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) ("In tort actions, New York applies a so-called interest analysis. Under such an analysis, the law of the jurisdiction having the greatest interest in the litigation applies.");

*L.G. ex rel. Gerges v. Mogen Circumcision Instruments, Ltd.*, No. 06-cv-5864, 2010 WL 2816262, at *3 (E.D.N.Y. June 25, 2010) ("When a conflict of laws arises in actions sounding in tort, New York courts use an 'interest analysis' to determine which of the competing jurisdictions has the greater interest in having its law applied to the underlying controversy." (citing *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521-22 (1994))).

**B.    Statute of Limitations**

In diversity actions such as this, a New York federal court will generally apply the statute of limitations of the law of the forum state—not the law of the state in which the action accrued. *SOCAR*, 144 F. Supp. 3d at 395 (citing *Morson*, 814 F. Supp. 2d at 225).  This general rule is subject to New York's "borrowing statute," CPLR § 202.  *Id.* (citing *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)).  Pursuant to CPLR § 202, when a non-resident plaintiff brings a cause of action that arises outside of New York, "the court must apply the shorter limitations period, including all relevant tolling provisions, of either:  (1) New York; or (2) the state where the cause of action accrued."  *Stuart*, 158 F.3d at 627 (citing CPLR § 202).

Regrettably, Plaintiff did not appreciate the distinction that New York courts draw between substantive and procedural questions when engaging in a choice-of-law analysis. "[T]here is a significant difference between a choice-of-law question, which is a matter of common law," and a statute of limitations issue, "which is governed by particular terms of the CPLR."  *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 715 N.E.2d 482, 485 (1999). "Classifying a statute is a 'key analytic step because' New York courts apply 'the law of the forum' to matters of procedure, whereas 'matters of substantive law fall within the course charted by choice of law analysis.'"  *Segarra v. Delta Airlines, Inc.*, No. 18-cv-8135, 2020 WL 3127879, at *3 (S.D.N.Y. June 12, 2020) (quoting *Tanges v. Heidelberg North America, Inc.*,

710 N.E.2d 250, 252-53 (N.Y. 1999)).  In her opposition, Plaintiff submits that pursuant to New

York's choice-of-law principles, *i.e.*, the "interest analysis" under *AroChem*, Missouri law

applies to her claims and, consequently, Missouri's statute of limitations applies.  *See* Pl.'s

Opp'n at 11-12, 14.  In essence, Plaintiff appears to argue that pursuant to Missouri substantive

law, Missouri's statute of limitations applies.  However, Plaintiff's statement of the law is

incorrect.

New York statutes of limitations are classified as procedural.  *See* Defs.' Mem. at 5-6;

Defs.' Reply at 1-2; *see also Segarra*, 2020 WL 3127879, at *3 ("New York courts regard

statutes of limitations as procedural."); *Morson v. Kreindler & Kreindler, LLP*, 814 F. Supp. 2d

220, 225-26 (E.D.N.Y. 2011) ("Choice of law provisions typically apply to only substantive

issues and statutes of limitations are considered procedural because they are deemed as

pertaining to the remedy rather than the right. . . .  [S]ince under common-law rules matters of

procedure are governed by the law of the forum, it has generally been held that the Statute of

Limitations of the forum rather than that of the jurisdiction where the cause of action accrued

governs the timeliness of a cause of action."  (first citing *Portfolio Recovery Assoc., LLC v. King*,

14 N.Y.3d 410, 416, 901 N.Y.S.2d 575, 927 N.E.2d 1059 (2010); then citing *Martin v. Julius

Dierck Equip. Co.,* 43 N.Y.2d 583, 588, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978))).  Courts have

made clear that  New York's "interest analysis *does not* apply to statutes of limitation."  *Berlin v.

Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 564 (E.D.N.Y. 2020) (quoting *Dagliano v. Eli Lilly,

Pharm. Drug Co.*, 538 Fed. App'x 110, 11 (2d Cir. 2013)) (emphasis added); *see also Bianco v.

Erkins (In re Gaston & Snow)*, 243 F.3d 599, 608 (2d Cir. 2001) ("CPLR 202 is in the nature of

an exception to the normal New York conflicts rule of applying the law of the jurisdiction with

the most significant contacts.").

Aside from the interest analysis test, Plaintiff offers no other basis to support her argument that Missouri's statute of limitations applies. She does not cite at all New York's borrowing provision, CPLR § 202. Notwithstanding this defect in Plaintiff's opposition, the Court must look to New York's borrowing statute to evaluate the timeliness of her claims because general choice-of-law tenets are inapplicable to CPLR § 202. *See Morson*, 814 F. Supp. 2d at 224-26 (applying New York's borrowing statute in action transferred from District of Massachusetts); *see also Aboushanab v. Janay*, No. 06 Civ. 13472, 2007 WL 2789511, at *3 (S.D.N.Y. Sept. 26, 2007) ("Modern choice-of-law decisions are . . . inapplicable to the question of statutory construction presented by CPLR 202."). Accordingly, the question becomes whether New York or Missouri provides a shorter statute of limitations for Plaintiff's claims pursuant to CPLR § 202.

### 1.    *Applicable Statute of Limitations*

The parties do not appear to dispute that Missouri provides a five-year statute of limitations for Plaintiff's claims. *See* Pl.'s Opp'n at 24; Defs.' Reply at 1-2. The more difficult issue is which of New York's statutes of limitations applies. Defendants argue that under New York law, negligence and breach of fiduciary duty claims for monetary relief are subject to a three-year statute of limitations pursuant to CPLR § 214(4). *See* Defs.' Mem. at 7. Although Plaintiff maintains that New York law does not apply, even if it does, she argues that her claims are not governed by a "three-year statute of limitations generally applicable to malpractice claims," but ratherby the six-year statute of limitations in CPLR § 213(2) for actions related to contracts. *See* Pl.'s Opp'n at 24-25.

Case law in this Circuit is clear that claims for negligence "must be filed within three years." *See Morson*, 814 F. Supp. 2d at 226-27. However, it is less clear as to the statute of

limitations for breach of fiduciary duty claims.  Although Plaintiff seeks to rescue her claims by asserting they that are contract- and malpractice-based, her arguments are unavailing.  First, Plaintiff cites *Schur v. Porter*, 712 F. Supp. 1140 (S.D.N.Y. 1989) and *Video Corp. of America v. Frederick Flatto Assocs.*, 448 N.E.2d 1350 (N.Y. 1983) which are outdated decisions holding that the six-year statute of limitations in CPLR § 214(6) -- not CPLR § 213(2) -- applied to legal malpractice actions rooted in breach of contract.  The New York legislature amended CPLR § 214(6) to provide that in "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, *regardless of whether the underlying theory is based in contract or tort*," the action must be commenced within three years.  CPLR § 214(6) (emphasis added); *see also Chase Sci. Research, Inc. v. NIA Grp., Inc.*, 749, N.E.2d 161, (N.Y. 2001) ("[T]he Legislature amended 214(6) to clarify that the limitations in nonmedical malpractice claims is three years, 'whether the underlying theory is based in contract or tort." (citing CPLR § 214(6), as amended by L. 1996, ch. 623)).  However, Plaintiff later retreats from this argument by stating that "Section 216(4) does not apply to malpractice claims involving financial advisors or investment managers" and then contending that § 213(2) applies.  *See* Pl.'s Opp'n at 26-27.

Plaintiff then relies upon *Ironshore Ins. Ltd. v. Western Asset Mgmt. Co.* and *Kaplin v. Buendia* for the proposition that "tort-based malpractice claims against financial advisors that had their 'genesis' in writing" are governed by a six-year statute of limitations.  *See id.* (first citing *Ironshore Ins. Ltd. v. Western Asset Mgmt. Co.*, No. 11 Civ. 05954, 2012 WL 1981477 (S.D.N.Y. May 30, 2012); then citing *Kaplin v. Buenida*, No. 15 Civ. 649, 2015 WL 7460025 (S.D.N.Y. Nov. 24, 2015)).  In *Ironshore*, the court stated that fiduciary duty claims which sound in tort and seek monetary damages are governed by a three-year statute of limitations. *Ironshore*, 2012 WL 1981477, at *4 (citing *Malmsteen v. Berdon LLP*, 369 Fed. App'x 248, 250

(2d Cir. 2010)).  On the other hand, the court stated that a fiduciary duty claim sounding in contract is subject to a six-year statute of limitations.  *Id.* (citing *Malmsteen*, 369 Fed. App'x at 250).  The court in *Ironshore* ultimately held that CPLR § 213(2) supplied a six-year statute of limitations for the plaintiff's breach of fiduciary claim which arose out of the contractual relationship between the parties and also sought monetary relief.  *Id.*  The court in *Kaplin* reached a similar conclusion.  *See Kaplin*, 2015 WL 7460025, at *2-3.

However, both of these decisions on which Plaintiff relies appear to have overlooked the New York Court of Appeals' 2009 clarification of the statute of limitations for breach of fiduciary duty claims.  *See IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268 (N.Y. 2009).[2]  In *IDT Corp.*, the New York Court of Appeals stated that "New York does not provide a single statute of limitations for breach of fiduciary duty claims.  Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks."  *Id.* at 272.  The Court of Appeals then identified three different statutes of limitations set forth in the CPLR which could apply to breach of fiduciary duty claims.  *Id.*  First, if "the remedy sought is purely monetary in nature, courts construe the suit as one alleging 'injury to property,'" and CPLR § 214(4)'s three-year statute of limitations applies.  *Id.*  Second, if "the relief sought is equitable in nature, the six-year statute of limitations" in CPLR § 213(1) applies.  *Id.*  And third, "where an allegation of fraud is essential to a breach of fiduciary duty claim," courts apply a six-year statute of limitations under CPLR § 213(8).  *Id.*  Notably, the Court of Appeals dispensed with the designation of a breach of fiduciary duty claim as rooted in either contract or tort for

_____

[2]         Whereas *Ironshore* does not even cite *IDT Corp.*, *Kaplin* utilized one limited quote from *IDT Corp.* which states that "New York law does not provide a single statute of limitations for breach of fiduciary duty claims.  Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks."  *Kaplin*, 2015 WL 7460025, at *2 (quoting *IDT Corp.*, 12 N.Y.3d at 139).

purposes of determining the applicable statute of limitations, despite the underlying complaint in *IDT Corp.* being contractually based.

More recent cases which cite *IDT Corp.* likewise omit classifying breach of fiduciary duty claims as either sounding in tort or contract, and instead base their determinations regarding the applicable statute of limitations *solely* on the type of remedy the plaintiff seeks—unless the claim is rooted in fraud as described in CPLR § 213(8). *See Ambac Assurance Corp. v. U.S. Bank Nat'l Assoc.*, 328 F. Supp. 3d 141, 161 (S.D.N.Y. 2018) ("Under New York law, the limitations period for such a [breach of fiduciary duty]claim depends on two variables: (1) the type of relief sought; and (2) whether fraud is alleged."); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 398 (E.D.N.Y. 2018); *Moza LLC v. Tumi Produce Int'l Corp.*, No. 17-cv-1331, 2018 WL 2192188, at *4-5 (S.D.N.Y. May 14, 2018); *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, No. 06 Civ. 1202, 2017 WL 2880554, at *5 (S.D.N.Y. July 6, 2017); *Reza v. Khatun*, No. 09-CV-233, 2013 WL 596600, at *3 (E.D.N.Y. Feb. 15, 2013); *Lia v. Saporito*, 909 F. Supp. 2d 149, 165 (E.D.N.Y. 2012) (collecting cases); *see also Abraham v. Leigh*, No. 2019 WL 4256369, at *7 (S.D.N.Y. Sept. 9, 2019) ("If a plaintiff seeks both equitable and monetary relief, the Court should 'look[ ] to the reality, rather than the form, of [the] action.' If the plaintiff seeks primarily equitable relief, the six-year statute of limitations applies, even if damages are also sought. In contrast, if the equitable relief the plaintiff seeks is incidental to the monetary damages sought, the three-year statute of limitations applies to plaintiff's breach of fiduciary duty claims." (citing *IDT Corp.*, 12 N.Y.3d at 139-40)).

Other than *Kaplin*, only one other court has even cited *Ironshore*. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 582 (E.D.N.Y. 2014) ("Because the fiduciary duty alleged by plaintiffs arises from a contractual relationship, the six-year statute of limitations

applies." (citing *Ironshore*, 2012 WL 1981477, at *4)).  Conversely, there is an extensive line of cases stemming from *IDT Corp*.  Therefore, Plaintiff's arguments that *Ironshore* applies are not persuasive.  Accordingly, the Court will determine the applicable statute of limitations for Plaintiff's breach of fiduciary duty claim based upon the type of relief she seeks pursuant to *IDT Corp*. and its progeny.

In the First Amended Complaint, Plaintiff solely seeks monetary damages in the amount of $3.5 million and does not request any equitable relief.  Consequently, as CPLR § 214(4) provides a three-year statute of limitations for Plaintiff's negligence claim, it likewise provides a three-year statute of limitations for her breach of fiduciary duty claim because Plaintiff seeks only monetary relief.  Thus, pursuant to New York's borrowing provision, the Court must apply New York's shorter, three-year statute of limitations to both of Plaintiff's claims as opposed to Missouri's five-year statute of limitations.

### 2.   Timeliness of Plaintiff's Claims

Defendants submit that the latest date by which Plaintiff's claims could have accrued is November 8, 2013.  Defs.' Mem. at 9.  Plaintiff does not appear to dispute this.  S*ee* Pl.'s Opp'n at 24 ("Even if the date selected by Defendants applies, the date of Ora's death on November 8, 2013, this case was filed well within the applicable statute of limitations.").  In light of the fact that the instant action was commenced in Missouri state court on July 10, 2017, more than three years after the date of accrual, Plaintiff's claims are untimely pursuant to CPLR § 214(4).

Plaintiff makes a last-ditch effort to save her breach of fiduciary duty claim by arguing that the clock is tolled under New York's "open repudiation" doctrine.  *Id.* at 26.[3]  The open

---

[3]     The Court is not considering this argument as applied to Plaintiff's negligence claim in light of the fact that Plaintiff's negligence claim does not specifically allege that fiduciary duty was breached.  *See* FAC ¶¶ 28-32.  However, even if the Court did consider the

repudiation doctrine states that "the limitations period for claims arising out of a fiduciary relationship does not commence 'until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated.'"  *Spinnato*, 322 F. Supp. 3d at 397 (quoting *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001); *Westchester Religious Inst. v. Kamerman*, 262 A.D.2d 131, 691 N.Y.S.2d 502, 503 (1st Dep't 1999)).  Plaintiff submits that pursuant to this doctrine, "it was not until August 2014 that [Plaintiff] realized the assets would not be transferred to her by Defendants, which is when, for limitations purposes, the open repudiation of the trust and fiduciary relationship she had with Defendants was shattered, and she realized she would have to proceed with legal action."  Pl.'s Opp'n at 26.  Notably, this factual information is not contained in the First Amended Complaint nor in an exhibit attached to it.  Rather, this information is set forth in a self-serving affidavit by the Plaintiff that is attached to her opposition brief and which is inappropriate for the Court to consider at the motion to dismiss stage.  *See* Kleiman Aff.

Even if the Court were to credit Plaintiff's affidavit, the Court's finding that Plaintiff's breach of fiduciary duty claim is untimely is not disturbed.  Although Plaintiff argues that pursuant to *People v. Ben*, the open repudiation doctrine applies "regardless of whether the plaintiff has sought equitable relief or monetary damages," *see* Pl.'s Opp'n at 26 (citing *People v. Ben*, 866 N.Y.S.2d 464 (App. Div. 4th Dep't 2008), the majority of cases have held that this doctrine "only applies to a plaintiff seeking equitable relief, not one seeking monetary damages."  *Spinnato*, 322 F. Supp. 3d at 398; *see also Castellotti v. Estate of Castellotti*, No. 17 Civ. 1512, 2019 WL 1778148, at *2  (E.D.N.Y. April 22, 2019) ("[T]he open repudiation doctrine is

---

argument, the open repudiation doctrine would not apply to Plaintiff's negligence claim for the same reasons it does not apply to her breach of fiduciary duty claim.

inapplicable to [plaintiff's] claim because the doctrine only applies to the six-year statute of limitations for equitable relief—not the three-year period for monetary damages."); *Willensky v. Lederman*, No. 2015 WL 327843, at *n.21 (S.D.N.Y. Jan. 23, 2015) ("The open repudiation doctrine applies only to claims for equitable relief and not to claims for money damages." (citing *Kaszirer v. Kaszirer,* 286 A.D.2d 598, 730 N.Y.S.2d 87, 88 (App. Div. 1st Dep't 2001))); *Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11-CV-6345, 2012 WL 3930112, at *9 (S.D.N.Y. Sept. 10, 2012) ("[T]he open repudiation doctrine is inapplicable to [the] [p]laintiff's claim because the doctrine only applies to the six-year statute of limitations for equitable relief-not the three-year period for monetary damages."); *see also Cusimano v. Schnurr*, 137 A.D.3d 527, 27 N.Y.S.3d 135 (App. Div. 1st Dep't 2015) ("We reject plaintiffs' claim that the statute of limitations should be tolled by the open repudiation doctrine, which only applies to claims for accounting or equitable relief.  Here, plaintiffs seek money damages for their breach of fiduciary claims, and thus this rule is inapplicable." (citations omitted)).

As mentioned above, Plaintiff seeks only monetary relief in the amount of $3.5 million; therefore, the open repudiation doctrine is inapplicable to her breach of fiduciary duty claim. Thus, both of Plaintiff's claims are untimely and the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be GRANTED.[4]

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Feuerstein that Defendants' motion to dismiss be GRANTED in accordance with this Report and Recommendation.

---

[4]    In light of the Court's finding that Plaintiff's claims are time-barred, the Court need not engage in a choice of law or "interest analysis" to determine whether New York or Missouri law provides the substantive basis for her claims.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from entry f this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Sandra J. Feuerstein.  Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**SO ORDERED.**


Dated: Central Islip, New York
  September 30, 2020     /s/ A. Kathleen Tomlinson
             A. KATHLEEN TOMLINSON
             U.S. Magistrate Judge